UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE LUIS GAVINO TEOFILO and
EUSTOLIO GABINO TEOFILO,

          Plaintiffs,

-v.-

REAL THAI CUISINE INC.; NIMNUAL
LIKITVARIN; and POOKIE DOE,

          Defendants.

18 Civ. 7238 (KPF)

**ORDER GRANTING APPLICATION
FOR DEFAULT JUDGMENT**

KATHERINE POLK FAILLA, District Judge:

On August 10, 2018, Plaintiffs commenced this action against Defendants Real Thai Cuisine, Inc., Nimnual Likitvarin, and Pookie Doe, alleging violations of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). (Dkt. #1).[1] Defendants were served on August 15, 2018 (Dkt. #13), and August 21, 2018 (Dkt. #14-15), and filed an Answer to the Complaint on September 17, 2018. (Dkt. #20). At the request of the parties, on December 21, 2018, the Court referred the case to the Court-annexed Mediation Program. (Dkt. #22-23). Following unsuccessful mediation proceedings and the close of discovery, and upon the joint application of the parties, the Court scheduled trial for April 2020. (Dkt. #37).

On March 19, 2020, four days before the parties' pretrial submissions were due, the Court received a letter motion from Defendants' counsel

---

[1] This case was initially brought as a collective and/or class action, but the Court understands that the entry of a default judgment and the award of damages are being sought only by the two named Plaintiffs.

requesting a stay in proceedings and leave to withdraw as counsel.  (Dkt. #39).  On March 24, 2020, the Court agreed to stay the case while the parties continued with settlement discussions and Defendants' counsel conferred with his clients to discuss their legal options.  (Dkt. #40).  On May 26, 2020, the Court was informed that Defendants were neither interested in settling this matter nor seeking new representation.  (Dkt. #41).  On May 28, 2020, Defendants' counsel renewed his motion to withdraw from the case (Dkt. #43), and the Court granted his application (Dkt. #44).

Upon Defendants' failure to secure new representation, Plaintiffs moved for default judgment on June 16, 2020.  (Dkt. #45-47).  On July 7, 2020, the Court issued an Order to Show Cause why a default judgment should not be issued against Defendant Real Thai Cuisine Inc.  (Dkt. #53).  The Court thereafter issued an Order to Show Cause as to Defendant Likitvarin/Doe (whom the Court understands to be the same person) on August 26, 2020.  (Dkt. #61).  A hearing was held on October 2, 2020, at which only counsel for Plaintiffs appeared.  (Minute Entry for October 21, 2020).  Plaintiffs submitted their initial motion for default judgment against Defendant Real Thai Cuisine Inc. on November 16, 2020.  (Dkt. #69-70).  Plaintiffs thereafter submitted an amended motion for default judgment against Defendant Real Thai Cuisine Inc. and Defendant Likitvarin on December 28, 2020.  (Dkt. #73-74).

## DISCUSSION

### A.  Default Judgments and Calculation of Damages

Default occurs "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). And in determining whether to grant a motion for default judgment, courts in this Circuit consider (i) whether the defendant's default was willful; (ii) whether defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Guggenheim Capital, LLC* v. *Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013). Given the procedural history just outlined, the Court finds in favor of Plaintiffs. Following the parties' participation in mediation, discovery, trial preparation, and settlement discussions, Defendants ceased responding in this action. Their default was willful, they presented no meritorious defenses, and Plaintiffs will be unduly prejudiced by the denial of their motion.

Next, the Court must decide whether Plaintiffs have pleaded facts supported by evidence sufficient to establish each Defendant's liability with respect to each cause of action asserted. *See Au Bon Pain Corp.* v. *Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Where a defendant has defaulted, the district court must accept as true the well-pleaded allegations of the complaint, except those related to damages. *Finkel* v. *Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp.*, 653 F.2d at 65. The Court does so here, and finds, as a preliminary matter, that the well-pleaded allegations in the Complaint

satisfy the jurisdictional prerequisites of the relevant FLSA and NYLL provisions. *See* 29 U.S.C. §§ 206(a), 207(a)(1); NYLL §§ 2, 190 to 199-A; *see generally Marcelino* v. *374 Food, Inc.*, No. 16 Civ. 6287 (KPF), 2018 WL 1517205, at *9-10 (S.D.N.Y. Mar. 27, 2018). The Court further finds that these allegations substantiate Plaintiffs' claimed violations of the minimum wage and overtime provisions of the FLSA, *see* 29 U.S.C. §§ 206(a), 207(a)(1), 255(a), and of the minimum wage, overtime, spread-of-hours, wage notice, and wage statement provisions of the NYLL, *see* NYLL §§ 190 to 199-A, 652(1), 663, 195(1), 195(3).[2]

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Fustok* v. *ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Lenard* v. *Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Lenard*, 889 F. Supp. 2d at 527. The Court has reviewed the materials submitted by Plaintiffs and their counsel in connection with the instant application, and believes that a further

---

[2]   The Court understands from the materials submitted in connection with Plaintiffs' application for default judgment that Plaintiffs are no longer pursuing claims for having to purchase and maintain equipment and "tools of the trade." *See* 29 U.S.C. §§ 206(a); NYLL §§ 193, 198(b).

inquest would be unnecessary. (*See* Dkt. #73 (supporting declaration of Michael Faillace and exhibits, including sworn statements from each Plaintiff concerning his hours and pay ("Faillace Decl."))).

**B.     Plaintiffs' Damages for Wage and Notice Violations**

Under the FLSA, the applicable statute of limitations is two years, although it can be extended to three years upon a finding that the employer's violations were willful. 29 U.S.C. § 255(a). The applicable limitations period for NYLL claims is six years. NYLL § 663(3). Here, neither serves as a bar to Plaintiffs' recovery, as the earliest one of the Plaintiffs worked for Defendants was July 2017, and this lawsuit was filed in August 2018. However, where Plaintiffs bring claims under both statutes, they "may not receive a 'double recovery' of back wages under both the FLSA and [the] NYLL." *Hernandez* v. *Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (quoting *Gen. Tel. Co. of the Nw., Inc.* v. *EEOC*, 446 U.S. 318, 333 (1980)); *cf. Rana* v. *Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."). Because the NYLL prescribes a higher minimum wage, it shall be the focus of the Court's analysis.[3]

An employee who brings an action under the FLSA or the NYLL for unpaid wages must prove that he performed the work and was not

---

[3]     At all times relevant to Plaintiffs' claims here, the minimum wage under the FLSA was $7.25 per hour, *see* 29 U.S.C. § 206(a)(1), while the New York minimum wage rate for small employers of ten or fewer employees increased from $10.50 to $12.00 during the relevant time period, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1.

compensated properly for his time. *See Grochowski* v. *Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003) (citing *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). Additionally, the FLSA requires an employer to "make, keep, and preserve" records of employee wages, hours, and employment conditions. 29 U.S.C. § 211(c).

Under the FLSA, "[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only … submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'" *Gonzalez* v. *Masters Health Food Serv. Inc.*, No. 14 Civ. 7603 (VEC), 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting *Reich* v. *S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)). An employee discharges his burden at this first step "if he … can prove that [he] 'in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Jrpac*, 2016 WL 3248493, at *27 (quoting *Anderson*, 328 U.S. at 687). "This burden is 'not high' and may be met 'through estimates based on [the employee's] own recollection.'" *Id.* (quoting *Kuebel* v. *Black & Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)).

If an employee makes this showing, "[t]he burden then shifts to the employer to come forward [i] with evidence of the precise amount of work performed or [ii] with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Jrpac*, 2016 WL 3248493, at *27

(quoting *Anderson*, 328 U.S. at 687-88). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Gonzalez*, 2017 WL 3835960, at *16 (quoting *Anderson*, 328 U.S. at 688).

"A similar standard applies to unpaid compensation claims under [the] NYLL." *Gonzalez*, 2017 WL 3835960, at *16; *see Garcia* v. *JonJon Deli Grocery Corp.*, No. 13 Civ. 8835 (AT), 2015 WL 4940107, at *4 n.8 (S.D.N.Y. Aug. 11, 2015) ("Courts use the same burden-shifting framework to determine liability for unpaid overtime under the NYLL [and the FLSA]."). But under the NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof. "NYLL § 196-a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Canelas* v. *World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (quoting NYLL § 196-a(a)); *see generally Gamero* v. *Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017). The NYLL is more demanding than the FLSA, which permits an employer to discharge this burden merely by undermining the reasonableness of an employee's evidence that he was underpaid. *Cf. Jrpac*, 2016 WL 3248493, at *27. In contrast, the NYLL requires that an employer demonstrate by a preponderance of the evidence that it in fact paid its employees "wages, benefits and supplements." NYLL § 196-a(a); *see Jrpac*, 2016 WL 3248493, at *36. And "[i]f an employer

cannot satisfy its burden under the FLSA, it cannot satisfy th[is] 'more demanding burden' of the NYLL." *Canelas*, 2017 WL 1233998, at *9 (quoting *Doo Nam Yang* v. *ACBL Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005)).

Here, while Defendants provided pay records in discovery, the Court's review of those records discloses multiple deficiencies. (*See* Faillace Decl., Ex. G). Specifically, as noted by Plaintiffs' counsel, they do not reflect the days of the week or hours worked by Plaintiffs. (*Id.* at ¶¶ 16-17). Additionally, they do not include Plaintiff Eustolio Gabino Teofilo's work during a three-month period. (*Id.* at ¶ 17). The Court therefore accepts, as the best estimates of this information, the sworn statements provided by each Plaintiff. (*Id.* at Ex. E-F). The Court also adopts portions of the chart prepared by Plaintiffs' counsel from Plaintiffs' declarations and the relevant NYLL provisions. (*Id.* at Ex. I). From its review of the evidence, the Court concludes that Plaintiff Jose Luis Gavino Teofilo is entitled to **$30,004.32** in back wages and Plaintiff Eustolio Gabino Teofilo is entitled to **$24,073.06** in back wages.[4]

Under the terms of NYLL § 663, each Plaintiff is also entitled to liquidated damages "equal to one hundred percent of such underpayments found to be due," in the absence of a defense showing of "a good faith basis to believe that its underpayment of wages was in compliance with the law." *See generally Marcelino*, 2018 WL 1517205, at *17-18; *see also Rana*, 887 F.3d at

---

[4]   These figures include minimum wage, overtime, and spread-of-hours wages. For Plaintiff Jose Luis Gavino Teofilo, the minimum wage and overtime figure is **$27,623.97**, and the spread-of-hours figure is **$2,380.35**. For Plaintiff Eustolio Gabino Teofilo, the minimum wage and overtime figure is **$22,525.06**, and the spread-of-hours figure is **$1,548.00**.

122-23.  To present this defense, the employer must show that it "took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" *Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting *Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).  In addition, the employer must show that its good-faith actions were objectively reasonable.  *RSR*, 172 F.3d at 142-43.  The Second Circuit has observed that "the employer's burden [is] 'a difficult one,' emphasizing that 'double damages [are] the norm and single damages the exception.'"  *Barfield*, 537 F.3d at 150 (quoting *RSR*, 172 F.3d at 142).  During the relevant time period, Plaintiffs were each entitled to a liquidated damages award in the amount of 100 percent of back wages, which for Plaintiff Jose Luis Gavino Teofilo is **$30,004.32**, and for Plaintiff Eustolio Gabino Teofilo is **$24,073.06.**

The NYLL also requires employers to provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements at the time wages are paid.  *See* NYLL §§ 195(1)(a) & (3); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.  Plaintiffs have alleged that they received no such notices either at the beginning or for the duration of their employment, and the Court has no basis to doubt these claims.  Under NYLL § 198-1(d), employees are entitled to recover wage-statement statutory damages of $250 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  In the instant case, this means that each Plaintiff is entitled to **$5,000** in wage-statement statutory damages.  Under NYLL § 198-1(b), employees are entitled to recover wage-notice statutory

9

damages of $50 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000. Here, this results in an additional **$5,000** for each Plaintiff.

Finally, employees may recover prejudgment interest with respect to their back wages, but not with respect to liquidated damages or violations of the wage statement or wage notice provisions. NYLL § 198(1-a); *Salustio* v. *106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017). "New York law sets the relevant interest rate at nine percent per year." *Ortega* v. *JR Primos 2 Rest. Corp.*, No. 15 Civ. 9183 (JCF), 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017) (citing N.Y. C.P.L.R. § 5004). And to determine when prejudgment interest begins to accrue, "[c]ourts applying [the] NYLL in wage-and-hour cases 'often choose the midpoint of the plaintiff's employment within the limitations period.'" *Hengjin Sun* v. *China 1221, Inc.*, No. 12 Civ. 7135 (RJS), 2016 WL 1587242, at *6 (S.D.N.Y. Apr. 19, 2016) (quoting *Tackie* v. *Keff Enters. LLC*, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014)). The Court will award prejudgment interest in this case, starting from the midpoint of each Plaintiff's employment.

### C.    Attorneys' Fees and Costs

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Almanzar* v. *1342 St. Nicholas Avenue Rest. Corp.*, No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *12 (S.D.N.Y. Nov. 7, 2016) (citing *Najnin* v. *Dollar Mountain, Inc.*, No. 14 Civ. 5758 (WHP), 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015)); *see* 29 U.S.C.

§ 216(b); NYLL § 198(1-a). The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983).

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008), and *Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542 (2010))); *see generally Lilly* v. *City of New York*, 934 F.3d 222, 227-34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended). The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable, *see Allende* v. *Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011), and must provide the court with sufficient information to assess the fee application, *N.Y. State Ass'n for Retarded Children, Inc.* v. *Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

The court's focus is "on setting a reasonable hourly rate, taking account of all case-specific variables." *Arbor Hill*, 522 F.3d at 189. The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind that the "paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190. When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the court's discretion to reduce the requested rate. *See Savino* v. *Computer Credit,*

11

*Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). Once a court has determined the appropriate hourly rate, it must also examine whether the number of hours billed was reasonable. The court "should exclude excessive, redundant[,] or otherwise unnecessary hours[.]" *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see generally Murray* v. *UBS Sec.*, No. 14 Civ. 927 (KPF), 2020 WL 7384722, at *11-12 (S.D.N.Y. Dec. 16, 2020).

In addition to the lodestar amount, attorneys' fees may include "'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). These expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma* v. *Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and reasonable process server fees, *Rosendo* v. *Everbrighten Inc.*, No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

The Court has reviewed the submissions of Plaintiffs' counsel documenting the hours worked and the activities performed in support of this action. (Faillace Decl., Ex. J). It accepts the costs figure of **$1,793.80**. It also accepts the figure of 54.73 hours expended by Plaintiffs' counsel (both attorneys and staff) on this case, particularly given that the matter's seemingly outsized billings can largely be attributed to action (and inaction) on the part of Defendants. However, it adjusts slightly the rates charged, to bring them in line with other decisions in this District. *See, e.g., Hernandez* v. *Village Natural*

*Rest. Corp.*, No. 19 Civ. 8378 (ER), 2020 WL 5518314, at *1 (S.D.N.Y. Sept. 14, 2020) (collecting cases concluding that the proposed rates of attorneys at Faillace & Associates are "excessive"); *Guzman Iturbide* v. *Huntingwood, Inc.*, No. 18 Civ. 9036 (AJN), 2020 WL 4570492, at *2 (S.D.N.Y. Aug. 7, 2020) (same). Specifically, the Court awards $400 per hour for Michael Faillace; $300 per hour for Gennadiy Naydenskiy; and $100 per hour for the work of paralegals, for a total of **$14,875.50** in attorneys' fees for their work on this case. *See Rosendo*, 2015 WL 1600057, at *9 (determining reasonable hourly rates for Mr. Faillace and for a senior attorney with 10 years of experience were $400 and $300, respectively).[5]

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiffs are entitled to relief on their claims for back wages, for wage notice and wage statement violations, and for attorneys' fees and costs. The Clerk of Court is directed to prepare a judgment reflecting the Court's holding and setting forth Plaintiffs' damages as follows:

> For Plaintiff Jose Luis Gavino Teofilo: $30,004.32 in back wages under the NYLL, with 9% prejudgment interest accruing from November 1, 2017; $30,004.32

---

[5] The Court surmises that certain entries attributed to "HA" in counsel's billing records pertain to the work done by former counsel Haleigh Amant, who withdrew from the action in February 2019. (Dkt. #26). The Court will award $225 per hour for her work on the matter. *See Baizan Guerrero* v. *79th St. Gourmet & Deli Inc.*, No. 18 Civ. 4761 (ARR) (ST), 2019 WL 4889591, at 11 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, No. 18 Civ. 4761 (ARR) (ST), 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (observing that Ms. Amant was an associate at Faillace & Associates, P.C. who graduated from law school in 2017); *Rosendo* v. *Everbrighten Inc.*, No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (S.D.N.Y. July 28, 2015) (finding that the reasonable hourly rate for an associate with three years of experience was $225).

in liquidated damages; $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3).

For Plaintiff Eustolio Gabino Teofilo: $24,073.06 in back wages under the NYLL, with 9% prejudgment interest accruing from May 1, 2018; $24,073.06 in liquidated damages; $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3).

The Court also awards attorneys' fees in the amount of $14,875.50 and costs in the amount of $1,793.80. "[I]f any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4).

Finally, the Court awards post-judgment interest pursuant to 28 U.S.C. § 1961.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Court directs Plaintiffs to transmit a copy of this Order to Defendants through any means they have previously used to communicate with Defendants.

SO ORDERED.

Dated:   January 4, 2021
         New York, New York

                                          KATHERINE POLK FAILLA
                                          United States District Judge